No. 21,083.

F. C. KURT, *Appellant*, v. E. M. MOSCRIPT et al., *Appellees*.

SYLLABUS BY THE COURT.

AGENCY—*Agent Withholding Information from Principal—Agent Contracting to Purchase—Specific Performance Denied.* Where a real-estate agent who is employed to find a buyer fails to communicate to his principal an offer he has received, and as a consequence the latter names a lower price, at which the agent agrees to take it himself, specific performance of the resulting contract will not be granted at the instance of the agent, because he can not, even after his agency has ceased, take advantage of an offer brought about by his previous concealment of information which it was his duty to impart.

Appeal from Kingman district court; LITTLETON M. DAY, judge *pro tem.* Opinion filed October 6, 1917. Affirmed.

*S. S. Alexander,* of Kingman, for the appellant.

*Charles C. Calkin,* of Kingman, for the appellees.

The opinion of the court was delivered by

MASON, J.: E. M. Moscript, the owner of a half interest in a quarter section of land, the other half interest in which was owned by his brother William, had some correspondence with F. C. Kurt, an insurance agent and real-estate broker, which the latter contends resulted in an agreement for its sale to him for $2000. Kurt brought an action against Moscript for specific performance. A demurrer to the plaintiff's evidence was sustained, and he appeals.

The full correspondence between the parties, so far as it affects the present controversy, was as follows:

Moscript to Kurt, March 6, 1915.

"Now Concerning A Matter that I Will Give to You in Confidence Trusting You From Just My Limited Acquaintance, I Want to Sell My Undivided One Half Interest in the Old Home Place, But Can give No Price But Will Make the Price Low. I think the People there Want it. I Have Had all the Tax to pay and All the Burden and Want to Get Out From Under. Go Down there And Look it Over and they Will think You Want it and let them think so. they May Offer You A Deal. I Will Give a Reasonable Commission They are All Sore On Me Because I Stoped their Easy Way of Making A Living and Nothing is Bad Enough for them to Say about Me I understand Bill has charge

Kurt v. Moscript.

of Elmers intres now. Engineer the Matter So they Will think Some-
one Else is after it and See What the Result Will Be."

## Kurt to Moscript, March 20, 1915.

"Now as to that other matter will say that I had a neighbor go
and see Will about that. He seems to think he can arrange to get this
fixed. In fact, he left an offer with me. This man has a claim in
Eastern Colorado that he would trade you and pay you $1500 in cash
for your ½ interest. This is just a prairie quarter and you will know
as much about it as I do. Am giving you the numbers to it so that you
can tell more about it. S ½ of NE ¼ and N ½ of SE ¼ Sec. 34,
Township 30, Range 42, Caca Co., Colorado. Now I do not know the
value of this or anything about it, but you pass judgment on it and
tell me what you would do on it, and if you can't use that land give me
your best price and terms on a cash deal and I will go to Will myself
and see what I can do."

## Moscript to Kurt, April 2, 1915.

"The Land in Question I Do Not Want the Colo Land at all Will
take $2000 for the ½ of the Old Home Place if sold Soon Have A
Standing Offer of $1800 For it."

## Kurt to Moscript, April 6, 1915.

"Now as to the deal on the place my man came in that wanted to
trade for it. I told him no trade would go and we talked it over and we
thought the price was cheap and we would just buy it in cahoots, and
I am enclosing you check for $50.00 ernest money. You may make
out deed to me, Frank C. Kurt, or if you will leave it in blank and
mail to the Spivey State Bank Spivey Kansas together with abstract
and when same is complete you get the balance of 1950.00 deal to be
complete inside of 30 days."

## Moscript to Kurt, April 9, 1915.

"Yours With Proposition and Acceptance of My Price on the Unde-
vided One Half interest in the Home Place, is Before Me Fith the Check
Fo $50 Dan, Dallahan Has A Mortgage on the Place For $600 Not Due
until Next Fall But I Have Written him to Day Asking him to Cancel it
and He Can get His Money from the Spivey Bank When it is Paid in there
the Balance Can be Sent to Me I Asked Him to Have &A Deed Executed
there On Your Kansas Forms and Sent to Me For Signature Or If He
Does Not Want to do that You Can assume the $600 and Pay it When
Due. and Posably You can Co Your Business Trough His Bank as Well
as Through the Spivey Bank But I Presume the Deed will Be Here in A
Day Or So."

## Kurt to Moscript, April 12, 1915.

"Yours received today and in reply to same will say, that I did not
know there was any thing against the place here, but that will be O. K.
ret I will want these papers all to go to the Bank of Spivey as that is

where I do my banking, so when the deed is signed if you must return to Dan Cllahan ask him to mail same to Spivey and we will take up his papers there and I wish you would ask him to not tell what the consideration in this deal was, as I would rather not let that out yet even through it don't make any difference. I presume the abstract is with Dan Callahan & the loan. I have mailed the Ins policy to The Warren Mtg. Co. the premium on this is $13.75 you may either mail check for that or instruct Bank at Spivey to hold that much back on the land deal for me. I wonder if I can sell your brother the ½ I bought from you or if he will bock. But I will chance that."

### Moscript to Kurt, April 19, 1915.

"Dear Sir I Find I Can Not Get this Little Mortgage Released and this Deal here I wished to Make has Been Closed Because Someone Else got there First I Have Decided Not to Sell the Place Just at Present I am Returning your check I think this Land in Barber Co. will Be worth More money in the Fall then Now & as I Have Just Disposed of a Mine am Not Needing the Money."

### Kurt to Moscript, April 24, 1915.

"Yours with check enclosed at hand and in reply to same will say that I am returning same herewith and if you can't get the mortgage released I will take it with same on. I will insist that you come through on this deal as this will cause my damage if you dont on account of another deal that this spoiled. You say that you made another deal and that you do not need the money & ect. that did not sem to be your reason for selling in the first place. You just wanted to get this deal closed. you set the price and I took you up and you acknowledged the acceptance of same. now be a man and forward deed to Spivey State Bank as per contract. please send check for the insurance $13.50."

### Moscript to Kurt, April 28, 1915.

"Your Somewhat Sarcastic Letter at Hand and in Reply will Say that The Only Reason I had to Sell you that Land Was to Make A Deal Here That I thought I Could Made as Much as I Lost on the Land there which had to Be Made Quick and in Your Proposition of 30 Days I Had Lost the Deal. that is all there is to It and I turned the Deal Down with You. Find Enclosed your Check for $50 also Check for the Amount Of the Insurance."

Kurt testified that the neighbor whom he had go and see Will Moscript was John Leslie; that Leslie reported that Will had offered $2500 for E. M. Moscript's half interest in the land; that he (the plaintiff) knew when he wrote the letter of March 20, and during the rest of the correspondence, that Will would pay that for it, but that he never communicated this fact to the defendant; that Leslie had offered to give $1500 and the Colorado land for the defendant's interest in the quarter

Kurt v. Moscript.

section referred to, but that the plaintiff had agreed to take it for $2000 on his own responsibility.

The evidence therefore shows substantially these facts: The defendant invited the plaintiff to act as his agent in an effort to sell the land to his brother. The plaintiff accepted the invitation and undertook negotiations to that end. He procured an offer of $2500, but instead of communicating this to his principal he submitted another offer of part cash and part land, saying, "If you can't use that land give me your best price and terms on a cash deal and I will go to Will myself and see what I can do." This elicited an offer to sell for $2000, which the plaintiff at once undertook to accept for his own benefit.

Assuming that the letter of April 6 advised the defendant that the plaintiff was undertaking to buy the land himself, and was no longer acting as his agent, and that the defendant with that knowledge continued negotiations which resulted in an agreement for a sale at $2000, we think the court was right in refusing a decree for specific performance. Fair dealing on the part of the plaintiff required him to make known to the defendant the fact that the brother to whom he desired to make a sale was willing to pay $2500 for the land. Had this been done the offer of the owner to sell for $2000 would of course not have been made. The plaintiff, therefore, while still acting as the defendant's agent, induced his principal to name a price of $2000 by concealing the fact that an offer of $2500 had already been made by the very person to whom he was supposed to be trying to make a sale. It would be unconscionable under such circumstances to permit him to divest himself of his fiduciary character and take advantage for his own benefit of the offer brought about by his unfaithful conduct in withholding information from the owner while still undertaking to act in his behalf. After the relation of principal and agent has ceased the parties may of course deal with each other as strangers, but equity will not permit the former agent to reap an advantage from such a transaction at his principal's expense, the foundation of which was laid during the existence of the agency by withholding information which it was his duty to impart. (2 Enc. L. & P. 1054; 2 C. J. 714.)

The judgment is affirmed.